IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| Sammy Lee Scarborough, | ) | C/A No.: 1:24-3646-JFA-SVH |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| vs. | ) | REPORT AND |
| | ) | RECOMMENDATION |
| Curtis Earley, | ) | |
| | ) | |
| Respondent. | ) | |
| | ) | |

Sammy Lee Scarborough ("Petitioner") is an inmate at Perry
Correctional Institution in South Carolina who filed this petition, proceeding
pro se, for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. This matter
is before the court pursuant to 28 U.S.C. § 636(b) and Local Civ. Rule
73.02(B)(2)(c) (D.S.C.) for a Report and Recommendation on Respondent's
return and motion for summary judgment. [ECF Nos. 25, 26]. Petitioner filed
a response on January 24, 2025. [ECF No. 39].

Having carefully considered the parties' submissions and the record in
this case, the undersigned recommends granting Respondent's motion for
summary judgment.

I.     Factual and Procedural Background

Petitioner is confined pursuant to commitment orders of the Dillon
County Clerk of Court. In 2013, a Dillon County grand jury indicted
Petitioner on the following seven crimes committed against three minors,

1

Minor #1, Minor #2, and Minor #3[1]: three counts of criminal sexual conduct ("CSC") with a minor, in the first degree, three counts of disseminating harmful material to minors, and one count of engaging a child under 18 for sexual performance. [ECF No. 25-3 at 577–90]. Petitioner had a two-day trial before the Honorable Paul M. Burch, Circuit Court Judge, and a jury on November 4, 2013. [ECF No. 25-1 at 1]. Assistant Solicitor Shipp Daniel and Assistant Attorney General Kelly Hall prosecuted the case. *Id.* Kyle Hobbs ("trial counsel") represented Petitioner. *Id.* After the State rested, it withdrew two of the indictments, one of the CSCs with a minor, first degree, regarding Minor #2, and the indictment for engaging a child under 18 for sexual performance. [ECF No. 25-2 at 388]. At the conclusion of the trial, the jury found Petitioner guilty on the remaining five indictments. *Id.* at 463. Judge Burch sentenced Petitioner to life imprisonment on the two CSCs with a minor, first degree, and five years on each of the three obscene material charges, to run concurrently. *Id.* at 476.

A.    Petitioner's Trial

The facts presented at trial are as follows: On May 25, 2012, the City of Dillon Police Department received a report two young men, Minor #1 and Minot #2, had been sexually molested. [ECF No. 25-1 at 121–22]. Detective

---

[1] Minor #1 and Minor #2 are siblings, and all three minors, as well as Petitioner, lived in the same neighborhood.

Jason Turner ("Turner") conducted an initial interview of the children, and then arranged for forensic interviews, which confirmed the initial report and further revealed a third, previously-unreported minor victim: Minor #3. *Id.* at 122–29.

Detective Turner interviewed each victim separately and obtained enough information to start an investigation. *Id.* Each victim disclosed that he was abused and where the abuse happened, and Turner was able to isolate the abuse to a range of dates based on when the family moved to a residence near Petitioner's home. *Id.* Turner arranged forensic interviews for Minor #1 and #2 for May 29, 2012, and drove the family to the Care House in Florence for the interviews. *Id.* at 127. Turner contacted Minor #3 shortly thereafter. He disclosed where the abuse happened and the date he reported it to his mother. *Id.* at 129. Turner testified he signed warrants for Petitioner on June 13, 2012, based on information received from the three victims. *Id.* On cross-examination, Turner admitted he did not search Petitioner's house for obscene materials. *Id.* at 145–47.

Four victims testified against Petitioner at trial. Minor #1 testified that Petitioner "put his ding a ding in my throat and made me choke" in Petitioner's barn. *Id.* at 202. Minor #1 also testified Petitioner showed him pictures of naked girls and boys in a magazine. *Id.* at 204–205. Minor #1 denied that his cousin Stefan ever touched him, and denied Stefan ever tried

to make Minor #1 touch him. *Id.* at 208. On cross-examination, Minor #1 described the barn as red with a white edge across it and again testified Petitioner "made me suck his ding a ding." *Id.* at 213.

Minor #2 testified he had seen Petitioner's private parts when Petitioner "made [Minor #1] suck his wee wee." *Id.* at 230. When the prosecution followed up for clarification, Minor #2 initially affirmed he saw Petitioner force Minor #2 to fellate Petitioner. *Id.* The State asked Minor #2 to talk about it, and Minor #2 explained "[i]t was when we were living in the other house. Minor #1 came in and said that." *Id.*

When asked to clarify, Minor #2 explained:

Q. Did you see it with your eyes? Yes. Where were you?
A. Home.
Q. You were at home. Where was [Minor #1] when that happened?
A. At his house.
Q. Whose house?
A. Sammy.
Q. So you didn't see it. Did you hear about it?
A. Um hum.

*Id.* Petitioner did not object and the State moved on. *See id.*

Minor #2 testified Petitioner showed him pictures of undressed "gay boys" humping. *Id.* at 231–33. Minor #2 testified he saw his cousin, Stefan, touch Minor #1's penis and saw Petitioner touch Minor #1's penis. *Id.* at 233–34. Minor #2 denied that Petitioner ever touched his penis or otherwise

committed a sexual battery against him, hence the State withdrew the indictments for Minor #2. *Id.* at 234–35.

The mother of Minor #3 explained how her child would spend time with Petitioner alongside Minor #1 and Minor #2, and Petitioner would give them candy, balloons, and on one occasion a Nerf football. *Id.* at 238–41. The mother testified Minor #3 disclosed sexual abuse "[i]n the backyard at Mr. Sammy's" occurring "about November of 2011." *Id.* at 241. She testified she did not report the disclosure to law enforcement until "May or June" of 2012 after she found out about the abuse suffered by the other children. *Id.* at 242.

Minor #3 testified Petitioner tried to hump him in Petitioner's backyard. *Id.* at 253. Minor #3 reported Petitioner gave him a football and a balloon. *Id.* at 254. Minor #3 testified he saw Petitioner's "turtle" when he was at the back of Petitioner's yard, and Petitioner tried to put his "turtle" in Minor #3's butt and it hurt. *Id.* at 256–57. Minor #3 also testified Petitioner showed him a nasty magazine with boys and girls humping with their clothes off. *Id.* at 258. Minor #3 stated that when Petitioner was humping him, Petitioner touched Minor #3's "turtle" and squeezed it, which he testified hurt. *Id.* at 259. He further testified Petitioner tried to make him suck Petitioner's "turtle," but Minor #3 did not do so. *Id.* at 261. On cross-examination, Minor #3 admitted he told the forensic interviewer that Petitioner had not touched his butt and that he had never taken his clothes

off around Petitioner. *Id.* at 264. However, he agreed that he was now saying Petitioner did touch his butt. *Id.* Minor #3 also testified Petitioner put his head close to Petitioner's "thing." *Id.*

Victim 4[2] testified that he saw Petitioner's "private part" while they were in his truck. *Id.* at 300. He stated Petitioner had his pants unbuttoned with his "private part" sticking out of the pants, and Petitioner made Victim 4 touch it with his lips. *Id.* at 301. Victim 4 testified Petitioner's "private part" was in his mouth for a second and that it made him feel bad. *Id.*

Sally Williamson ("Williamson"), the forensic interviewer from Care House, interviewed Minors #1, 2, and 3 and testified at Petitioner's trial. Neither Minor #1 nor #2 disclosed sexual abuse to her. *Id.* at 317, 332. Minor #3 did disclose sexual abuse to Williamson. *Id.* at 323. Valerie Williams, an investigator with the South Carolina Attorney General's office, also met with each of the victims in preparation for trial. *Id.* at 338–40. Minors #1 and #3 disclosed sexual abuse to her, but Minor #2 did not. *Id.* at 341–43.

Gaye Allen Cook, a clinical child and family therapist specializing in trauma and abuse, testified as a blind expert in child abuse assessment. *Id.*

---

[2] Petitioner was not charged for acts against Victim 4, but the child was permitted to testify under *State v. Lyle*, 118 S.E. 803 (S.C. 1923) and *State v. Wallace*, 683 S.E.2d 275 (S.C. 2009), over counsel's objections. *See also* Rule 404(b), SCRE (Other wrongs admissible "to show motive, identity, the existence of a common scheme or plan, the absence of mistake or accident, or intent.").

at 363–66. Cook testified children do not always report sexual abuse and that disclosure is a process that develops and occurs over time, rather than a singular event. *Id.* at 366–68. Cook further explained the prevalence of delayed disclosure by abused children and opined that 95–96% of children she had personally treated delayed in disclosing abuse. *Id.* at 368–70.

B.     Petitioner's Direct Appeal

Petitioner, represented by Kathrine H. Hudgins, Esquire, directly appealed his convictions to the South Carolina Court of Appeals ("Court of Appeals") raising the following issues:

1.     Did the trial judge abuse his discretion in refusing to sever seven different indictments naming three different child victims when the State failed to demonstrate that the three groups of alleged offenses were of the same general nature, failed to prove that the offenses arose out of a single chain of circumstances and were provable by the same evidence and the Applicant was prejudiced by the improper joint trial?

2.     Did the trial judge err in admitting Rule 404(b) evidence when the State failed to prove that the prior act was relevant and the prior act did not meet the common scheme or plan exception to Rule 404(b)?

3.     Did the trial [judge] abuse his discretion in refusing to declare a mistrial after [Victim 2] denied the allegations in one of the indictments and later in the trial the forensic interviewer and the investigator from the Attorney General's Office confirmed that [Victim 2] had denied the allegation contained in the indictment?

4.     Did the trial judge err in refusing to direct a verdict of acquittal on the three [counts of] dissemination of obscene

material charges when the State did not introduce in evidence any purported obscene material and relied only on the testimony of the child witnesses?

[*See* ECF No. 25 at 5–6]. The State filed a responsive brief. *See id.* at 6. On February 24, 2016, the Court of Appeals affirmed Petitioner's convictions and sentences in an unpublished opinion. *State v. Scarborough*, No. 2013-002458, 2016 WL 757427, at *1 (S.C. Ct. App. Feb. 24, 2016).

Petitioner filed a petition in the Supreme Court of South Carolina for a writ of certiorari, which was denied by order dated May 30, 2017. [*See* ECF No. 25 at 6]. The Remittitur was issued on June 2, 2017. *See id.*

C.     Petitioner's PCR Action

Petitioner filed an application for post-conviction relief ("PCR") on November 2, 2017. [ECF No. 25-2 at 479]. In an amended application, Petitioner raised the claim that counsel was ineffective for failing to object to the Solicitor allegedly bolstering the child victims' testimony during his closing argument. *Id.* at 487. Respondent made its return on or about February 2, 2018. *Id.* at 491.

The PCR Court convened an evidentiary hearing on July 23, 2018. *Id.* at 500. Petitioner was present at the hearing and represented by Lance Boozer, Esq. *Id.* Johnny James of the Attorney General's Office represented the State. *Id.* In an Order of Dismissal filed October 9, 2018, the PCR Court denied and dismissed the PCR application with prejudice. *Id.* at 553–76.

D.     Petitioner's PCR Appeal

Petitioner appealed the PCR denial in a petition for writ of certiorari to the South Carolina Supreme Court, raising the claim that counsel was ineffective for failing to object to the Solicitor allegedly bolstering the child victim's testimony during his closing argument. [ECF No. 25-4 at 3]. On September 27, 2023, the Court of Appeals issued an unpublished opinion affirming the PCR Court's decision. *Scarborough v. State*, No. 2018-001898, 2023 WL 6292493, at *1 (S.C. Ct. App. Sept. 27, 2023). The remittitur was issued on October 17, 2023, and filed on October 19, 2023. [ECF No. 25-11].

II.     Discussion

A.     Federal Habeas Issues

Petitioner raises the following grounds for relief:

**Ground One:**     Denial of effective assistance of counsel where counsel failed to object to solicitor vouching for the testimony of minor children, where the comment was made during closing argument that children "don't make this stuff up" when no physical evidence was recovered in this case.

Supporting Facts: At trial the solicitor in his closing argument vouched for the credibility of the minor witnesses: five, six, seven, and eight year olds don't make this stuff up. They just don't. The state bolstered the testimony of the minors in this case by qualifying it with the seal of approval of adults. Trial counsel should have objected and motion for a mistrial; however, he failed to do so and this violated the petitioner's sixth and fourteenth amendment rights.

9

**Ground Two:**    Trial judge abused his discretion in refusing to sever seven different indictments naming three different child victims when the State failed to demonstrate that the three groups of alleged offenses were of the same general nature, failed to prove that the offenses arose out of a single chain of circumstances and were provable by the same evidence and the Petitioner was prejudiced by the improper joint trial.

Supporting facts: Two of the indictments, one for criminal sexual conduct with a minor first degree and one for dissemination of obscene material, indictments 2013-GS-17-0292, 0293, involved Minor #1. Two of the indictments, one for criminal sexual conduct with a minor first degree and one for dissemination of obscene material, indictments #2013-17-0328, 0294, involved Minor #2. Two of the indictments, one for criminal sexual conduct with a minor first degree and one for dissemination of obscene material, indictments #2013-GS-17-0290, 0291, involved Minor #3. The last indictment for engaging a child in a sexual performance involved all three Minors.

Petitioner objected to the consolidation or joinder explaining that some of the minors were denying that they were actually sexually battered, and arguing that they were actually sexually battered, and arguing that the offenses do not arise out of a single chain of circumstances and the joinder results in substantial prejudice. (R. p. 11, line 24–p. 12, 13, lines 1–18). The judge allowed joinder stating "just from discussion it appears from the *Jones* case and much so in the interest of judicial economy the state is entitled to have it's [sic] motion granted. We'll get it all together and we'll try it." (R. P. 17, lines 3–7). The trial judge erred.

The state failed to prove a connection between the three groups of offenses. There were also substantial dissimilarities between the offenses. Minor #1 alleged oral sex. Minor #3 alleged humping or attempted anal sex and attempted oral sex. Minor #2 denied any sex. If separate trials had properly been granted, the evidence involving Minor #1 would not have been admissible in the trial

10

involving Minor #3 and vice versa. The evidence in regard to Minor #2 would not have met the clear and convincing standard required for admission pursuant to Rule 404(b), SCRE.

**Ground Three:**   The judge erred in admitting Rule 404(b) evidence when the State failed to prove that the prior act was relevant and the prior act did not meet the common scheme or plan exception to Rule 404(b).

Supporting facts: At trial, in addition to the three separate and improperly joined cases discussed above, the state moved to offer the testimony of Minor #4 pursuant to Rule 404(b) (R. pp. 17–48). The State argued that the testimony of Minor #4 should come in as evidence of a common scheme or plan. (R. p. 30, lines 5–12). Petitioner objected to the admission of the testimony arguing that the testimony did not mee the requirements of Rule 404(b). (R. pp. 34–41; 44–46). The judge granted the state's motion to admit the testimony.

Petitioner asked for clarification in regard to the ruling. The judge responded, "well, you got your similarities there. You've got young children. I agree with the State that you've got the degree of control, degree of authority by an adult male over children that apparently had children put in his care. And I don't think I need to go any further than to say that. What's been said and what's been argued is good enough for appellate review." (R. P. 47, line 22–p.48, lines 1–3).

Petitioner reviewed the objection to the prior bad act testimony of Minor #4 prior to Minor #4 testifying. (R. P. 245, line 21–p.246, lines 1–23; R. p. 248, line 15–p.249, lines 1–11). Additionally, Petitioner argued that the fact that Minor #2 denied abuse by Petitioner, a factor the judge was not advised of when he initially made the Rule 404(b) ruling, supports exclusion of Minor #4's testimony. The judge again overruled the objection. (R. p. 249, line 12). The trial judge erred.

11

**Ground Four:**    The trial judge abused his discretion in refusing to declare a mistrial after Minor #2 denied the allegations in one of the indictments and later in the trial the forensic interviewer and the investigator from the Attorney General's Office confirmed that Minor #2 had denied the allegation contained in the indictment.

Supporting facts: At the end of the State' case, the State "withdrew" indictment #2013-GS-17-710, engaging a child in sexual performance involving Minors #1, #2, and #3 and indictment #2013-GS-17-328, criminal sexual conduct with a minor first degree, involving Minor #2 (R. p. 367, lines 8–16). During the trial Minor #2 testified that no grown up has ever tried to show him their private parts and no grown up has ever tried to touch any of his private parts. (R. p. 208, lines 18–p. 209, Line 1). Minor #2 testified that Petitioner never touched him and he never touched Petitioner. (R. p. 214, lines 19–22). Minor #2's Grandmother and Aunt testified that Minor #2 did not disclose to them that he had been sexually abused. (R. p. 144, lines 17–20; p. 178, lines 18–23). Minor #2 had denied the allegation contained in indictment 2013-GS-17-328 for criminal sexual conduct with a minor first degree to both a forensic interviewer and to an investigator from the Attorney General's Office. (R. p. 310, lines 18–20; p. 331, lines 10–15; p. 321, line 14–p. 322, line 1).

The State went forward with and argued for a consolidated trial, including a criminal sexual conduct with a minor first degree charge involving Minor #2, knowing that, prior to trial, Minor #2 denied the criminal sexual conduct with a minor first degree accusation to both a forensic interviewer and an investigator from the Attorney General's office. (R. p. 310, lines 18–20; p. 311, lines 10–15; p. 321, line 14–p.322, line 1). During the motion to consolidate the state failed to inform the trial judge that Minor #2 denied abuse by Petitioner.

A mistrial was manifestly necessary in the present case in order to ensure a fair trial based on competent evidence rather than unsupported allegations contained in an

12

indictment. The fact that the indictment was "withdrawn" does not cure the prejudice. The state's opening statement references allegations involving all four minors. (R. pp. 89–94). The failure to grant the mistrial under the highly unusual facts of this case constitutes an abuse of discretion amounting to an error of law.

**Ground Five:**     The trial judge erred in refusing to direct a verdict of acquittal on the three dissemination of obscene material charges when the State did not introduce any purported obscene material and relied only on the testimony of the child witnesses.

Supporting facts: The three indictments for dissemination of obscene material were based solely on the testimony of the minors. The police never searched for or recovered any obscene material from Petitioner's house. At the close of the state's case Petitioner moved for a directed verdict of acquittal as to all three dissemination of obscene material charges, indictments 2013-GS-17-291, 293 and 294. (R. pp. 368–75). The judge denied the motion stating, "Well, the record will speak for that. Right now I'm going to overrule the objection. However, on that indictment 291 I may come back and revisit that later on." (R. p. 375, lines 8–10). The judge did not revisit the ruling. The trial judge erred in refusing to direct a verdict of acquittal for the dissemination charges.

While the statute does not require the state to introduce into evidence at trial the actual alleged obscene material, the state still bears the burden of proving that the material is obscene pursuant to the statute. The testimony of the minors in the present case did not establish that the material was obscene. The testimony failed to establish that the material depicted sexual conduct in a patently offensive way, failed to establish that the material appealed to a prurient interest in sex and failed to prove that the material lacked literary, artistic, political or artistic value. The state failed to meet its burden of proving that the material was obscene. The judge erred in refusing to direct

a verdict of acquittal for the dissemination of obscene material charges.

The minor's testimony does not establish that the material shown constituted obscene material viewing the evidence in light most favorable to the state, the testimony of the minors is not sufficient to establish that the material they testified to seeing was obscene. The trial judge erred in refusing to direct a verdict of acquittal for the dissemination charges. The testimony from the minors fails to establish that the material was obscene.

[ECF No. 7 at 6, 9–10, 12–13, 16–19].

B.    Standard for Summary Judgment

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "[S]ummary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* At the summary judgment stage, the court must view the evidence in the light most favorable to the non-moving party and draw all justifiable inferences in its favor. *Id.* at 255. However, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary

will not be counted." *Id.* at 248.

The moving party has the burden of proving that summary judgment is appropriate. Once the moving party makes this showing, however, the opposing party may not rest upon mere allegations or denials, but rather must, by affidavits or other means permitted by the Rule, set forth specific facts showing that there is a genuine issue for trial. *See* Fed. R. Civ. P. 56(e).

C.    Habeas Corpus Standard of Review

1.    Generally

Because Petitioner filed his petition after the effective date of the Antiterrorism and Effective Death Penalty Act ("AEDPA"), review of his claims is governed by 28 U.S.C. § 2254(d), as amended. *Lindh v. Murphy*, 521 U.S. 320 (1997); *Breard v. Pruett*, 134 F.3d 615 (4th Cir. 1998). Under the AEDPA, federal courts may not grant habeas corpus relief unless the underlying state adjudication: (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented at the State court proceeding. 28 U.S.C. § 2254(d)(1)(2); *see Williams v. Taylor*, 529 U.S. 362, 398 (2000). "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied

15

clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id*. at 410. Moreover, state court factual determinations are presumed to be correct and the petitioner has the burden of rebutting this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

### 2. Procedural Bar

Federal law establishes this court's jurisdiction over habeas corpus petitions. 28 U.S.C. § 2254. This statute permits relief when a person "is in custody in violation of the Constitution or laws or treaties of the United States[,]" and requires that a petitioner present his claim to the state's highest court with authority to decide the issue before the federal court will consider the claim. *Id.* The separate but related theories of exhaustion and procedural bypass operate in a similar manner to require a habeas petitioner to first submit his claims for relief to the state courts. A habeas corpus petition filed in this court before the petitioner has appropriately exhausted available state-court remedies or has otherwise bypassed seeking relief in the state courts will be dismissed absent unusual circumstances detailed below.

### a. Exhaustion

Section 2254 contains the requirement of exhausting state-court remedies and provides as follows:

(b)    (1) An application for a writ of habeas corpus on behalf of a

16

person in custody pursuant to the judgment of a State court shall not be granted unless it appears that—

> (A)  the applicant has exhausted the remedies available in the courts of the State; or
>
> (B)  (i) there is an absence of available State corrective process; or
>
> (ii) circumstances exist that render such process ineffective to protect the rights of the applicant.
>
> (2) An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.
>
> (3) A State shall not be deemed to have waived the exhaustion requirement or be estopped from reliance upon the requirement unless the State, through counsel, expressly waives the requirement.
>
> (c)  An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.

28 U.S.C. § 2254.

The statute requires that, before seeking habeas corpus relief, the petitioner first must exhaust his state court remedies. 28 U.S.C. § 2254(b)(1)(A). In South Carolina, a person in custody has two primary means of attacking the validity of his conviction: (1) through a direct appeal, or (2) by filing an application for PCR. State law requires that all grounds be stated

in the direct appeal or PCR application. Rule 203 SCACR; S.C. Code Ann. § 17-27-10, *et seq.*; S.C. Code Ann. § 17-27-90; *Blakeley v. Rabon*, 221 S.E.2d 767 (S.C. 1976). If the PCR court fails to address a claim as is required by S.C. Code Ann. § 17-27-80, counsel for the applicant must make a motion to alter or amend the judgment pursuant to Rule 59(e), SCRCP. Failure to do so will result in the application of a procedural bar by the South Carolina Supreme Court. *Marlar v. State*, 653 S.E.2d 266 (S.C. 2007).[3] Furthermore, strict time deadlines govern direct appeal and the filing of a PCR in the South Carolina courts. A PCR must be filed within one year of judgment, or if there is an appeal, within one year of the appellate court decision. S.C. Code Ann. § 17-27-45.

The United States Supreme Court has held that "state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process"—which includes "petitions for discretionary review when that review is part of the ordinary appellate review procedure in the State." *O'Sullivan v.*

---

[3] In *Bostick v. Stevenson*, 589 F.3d 160, 162–65 (4th Cir. 2009), the Fourth Circuit found that, prior to the Supreme Court of South Carolina's November 5, 2007, decision in *Marlar*, South Carolina courts had not been uniformly and strictly enforcing the failure to file a motion pursuant to Rule 59(e), SCRCP, as a procedural bar. Accordingly, for matters in which there was a PCR ruling prior to November 5, 2007, the court will not consider any failure to raise issues pursuant to Rule 59(e) to effect a procedural bar.

*Boerckel*, 526 U.S. 838, 845 (1999). This opportunity must be given by fairly presenting to the state court "both the operative facts and the controlling legal principles" associated with each claim. *Baker v. Corcoran*, 220 F.3d 276, 289 (4th Cir. 2000) (citing *Matthews v. Evatt*, 105 F.3d 907, 911 (4th Cir. 1997) (internal quotation marks omitted)). That is to say, the ground must "be presented face-up and squarely." *Mallory v. Smith*, 27 F.3d 991, 995 (4th Cir. 1994) (citation and internal quotation marks omitted).

The South Carolina Supreme Court has held that the presentation of claims to the state court of appeals without more is sufficient to exhaust state remedies for federal habeas corpus review. *State v. McKennedy*, 559 S.E.2d 850 (S.C. 2002); *see also In re Exhaustion of State Remedies in Criminal and Post-Conviction Relief Cases*, 471 S.E.2d 454 (S.C. 1990). The *McKennedy* court held that *In re Exhaustion* had placed discretionary review by the South Carolina Supreme Court "outside of South Carolina's ordinary appellate review procedure pursuant to *O'Sullivan*." 559 S.E.2d at 854. As such, it is an "extraordinary" remedy under *O'Sullivan*, "technically available to the litigant but not required to be exhausted," *Adams v. Holland*, 330 F.3d 398, 403 (6th Cir. 2003).

Because the South Carolina Supreme Court has held that presentation of certain claims to the Court of Appeals without more is sufficient to exhaust state remedies, a claim is not procedurally barred from review in this court

for failure to pursue review in the South Carolina Supreme Court after an adverse decision in the Court of Appeals.

b.    Procedural Bypass

Procedural bypass, sometimes referred to as procedural bar or procedural default, is the doctrine applied when a petitioner who seeks habeas corpus relief as to an issue failed to raise that issue at the appropriate time in state court and has no further means of bringing that issue before the state courts. In such a situation, the person has bypassed his state remedies and, as such, is procedurally barred from raising the issue in his federal habeas petition. Procedural bypass of a constitutional claim in earlier state proceedings forecloses consideration by the federal courts. *See Smith v. Murray*, 477 U.S. 527, 533 (1986). Bypass can occur at any level of the state proceedings if the state has procedural rules that bar its courts from considering claims not raised in a timely fashion.

The South Carolina Supreme Court will refuse to consider claims raised in a second appeal that could have been raised at an earlier time. Further, if a prisoner has failed to file a direct appeal or a PCR and the deadlines for filing have passed, he is barred from proceeding in state court. If the state courts have applied a procedural bar to a claim because of an earlier default in the state courts, the federal court honors that bar. As the Supreme Court explains:

> . . . [state procedural rules promote] not only the accuracy and
> efficiency of judicial decisions, but also the finality of those
> decisions, by forcing the defendant to litigate all of his claims
> together, as quickly after trial as the docket will allow, and while
> the attention of the appellate court is focused on his case.

*Reed v. Ross*, 468 U.S. 1, 10–11 (1984).

However, if a federal habeas petitioner can show both (1) "'cause' for noncompliance with the state rule[,]" and (2) "'actual prejudice resulting from the alleged constitutional violation[,]'" the federal court may consider the claim. *Smith v. Murray*, 477 U.S. at 533 (quoting *Wainwright v. Sykes*, 433 U.S. 72, 84 (1977)). When a petitioner has failed to comply with state procedural requirements and cannot make the required showing of cause and prejudice, the federal courts generally decline to hear the claim. *Murray v. Carrier*, 477 U.S. 478, 496 (1986), *superseded by statute on other grounds* (AEDPA).

If a federal habeas petitioner has failed to raise a claim in state court and is precluded by state rules from returning to state court to raise the issue, he has procedurally bypassed his opportunity for relief in the state courts and in federal court. A federal court is barred from considering the filed claim (absent a showing of cause and actual prejudice). In such an instance, the exhaustion requirement is technically met and the rules of procedural bar apply. *See Matthews v. Evatt*, 105 F.3d at 915 (citing *Coleman v. Thompson*, 501 U.S. 722, 735 n.1 (1991); *Teague v. Lane*, 489 U.S.

21

288, 297–98 (1989); *George v. Angelone*, 100 F.3d 353, 363 (4th Cir. 1996); *Bassette v. Thompson*, 915 F.2d 932, 937 (4th Cir. 1990)).

### 3. Cause and Actual Prejudice

Because the requirement of exhaustion is not jurisdictional, this court may consider claims that have not been presented to the state courts in limited circumstances in which a petitioner shows sufficient cause for failure to raise the claim and actual prejudice resulting from the failure, *Coleman*, 501 U.S. at 750, or that a "fundamental miscarriage of justice" has occurred. *Murray*, 477 U.S. at 495–96. A petitioner may prove cause if he can demonstrate ineffective assistance of counsel relating to the default, show an external factor which hindered compliance with the state procedural rule, or demonstrate the novelty of a particular claim. *Id.* Absent a showing of "cause," the court is not required to consider "actual prejudice." *Turner v. Jabe*, 58 F.3d 924 (4th Cir. 1995). However, if a petitioner demonstrates sufficient cause, he must also show actual prejudice in order to excuse a default. *Murray*, 477 U.S. at 492. To show actual prejudice, the petitioner must demonstrate more than plain error.

### 4. Ineffective Assistance of Counsel Claims

To prevail on his ineffective assistance of counsel claims, Petitioner must show (1) that his trial counsel's performance fell below an objective standard of reasonableness, and (2) that a reasonable probability exists that

but for counsel's error, the result of the proceeding would have been different. *Strickland v. Washington*, 466 U.S. 668, 694 (1984). The court must apply a "strong presumption" that trial counsel's representation fell within the "wide range of reasonable professional assistance," and the errors must be "so serious that counsel was not functioning as the counsel guaranteed the defendant by the Sixth Amendment." *Harrington v. Richter*, 562 U.S. 86, 104 (2011). This is a high standard that requires a habeas petitioner to show that counsel's errors deprived him "of a fair trial, a trial whose result is reliable." *Strickland*, 466 U.S. at 687. That the outcome would "reasonably likely" have been different but for counsel's error is not dispositive of the prejudice inquiry. Rather, the court must determine whether the result of the proceeding was fundamentally unfair or unreliable. *Harrington*, 562 U.S. at 104; *Strickland*, 466 U.S. at 694.

The United States Supreme Court has cautioned that "'[s]urmounting *Strickland*'s high bar is never an easy task[,]' . . . [e]stablishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult." *Harrington*, 562 U.S. at 88 (*quoting Padilla v. Kentucky*, 559 U.S. 356, 371 (2010)). When evaluating an ineffective assistance of counsel claim, the petitioner must satisfy the highly deferential standards of 28 U.S.C. § 2254(d) and *Strickland* "in tandem," making the standard "doubly" more difficult. *Harrington*, 562 U.S. at 105. In such circumstances, the

"question is not whether counsel's actions were reasonable," but whether "there is any reasonable argument that counsel satisfied *Strickland*'s deferential standards." *Id.* The unreasonableness of the state court determination must be "beyond any possibility of fairminded disagreement." *Id.* at 103. "If this standard is difficult to meet, that is because it was meant to be." *Id.* at 102. Section 2254(d) codifies the view that habeas corpus is a "'guard against extreme malfunctions in the state criminal justice system,' not a substitute for ordinary error correction through appeal." *Id.* at 102–103 (citing *Jackson v. Virginia*, 443 U.S. 307, 332 n.5 (1979)).

D.    Analysis

The parties agree Petitioner's claims are not barred by the applicable statute of limitations, he has properly exhausted all grounds, and his grounds are not procedurally-barred. [*See* ECF No. 25 at 9].

1.    Ground One

Petitioner argues he was denied effective assistance of counsel when his trial counsel failed to object to the solicitor's comment in closing argument that children "don't make this stuff up." Petitioner contends this remark prejudiced him because the trial hinged on the credibility of the minor victims.

The PCR Court addressed this issue as follows:

At trial, near the end of the State's closing argument, the solicitor asserted: "Let's be real. five, six, seven and eight year olds don't make this stuff up. They just don't." (Tr. 420, 11. 2–4). Counsel did not object. At the evidentiary hearing, Counsel testified he did not view the argument as vouching, but rather an argument that the young age of the victims meant there must be some basis or source for their claims.

The Court finds no deficiency on the part of counsel, nor prejudice therefrom. Counsel is correct in his determination that the argument did not constitute vouching. Prohibitions against vouching in closing argument do not foreclose any arguments for or against the credibility of witnesses. The remark offered no explicit personal assurance, or information beyond the record, but reasonably argued from the age of the victims that the victims should be afforded credibility. As such, there was no basis for objection. Even if the remark was objectionable, the single line at the end of closing argument does not give this Court cause to believe there is a reasonable probability that if the remark were excluded the outcome of trial would have been different. Accordingly, Applicant has failed to meet his burden as to either prong of *Strickland*, and his request for relief by way of this allegation is DENIED.

[ECF No. 25-3 at 74].

The Court of Appeals also addressed this issue as follows:

Sammy Scarborough was charged with two counts of first-degree criminal sexual conduct (CSC) with a minor and three counts of disseminating obscene material to a minor. During closing arguments for Scarborough's trial, the State asserted that "[c]ommon sense is what tells you that a five year old, a seven year old, a seven year old[,] and an eight year old don't make this kind of stuff up"; trial counsel did not object. At the PCR hearing, counsel testified he did not view the argument as vouching, but as an argument that the victims had some basis or source for their knowledge of sexual acts. Counsel also noted his theory of the cases was that another person, not Scarborough, was the basis of said knowledge.

We find probative evidence supports the PCR court's finding that trial counsel was not deficient for failing to object to the State's comments. *See Sellner v. State*, 416 S.C. 606, 610, 787 S.E.2d 525, 527 (2016) (holding a reviewing court "will uphold [the factual findings of the PCR court] if there is any evidence of probative value to support them"); *Strickland v. Washington*, 466 U.S. 668, 687 (1984) (providing that deficiency is the first prong of an ineffective assistance of counsel claim); *Smith v. State*, 386 S.C. 562, 567, 689 S.E.2d 629, 632 (2010) ("Counsel's performance is accorded a favorable presumption, and a reviewing court proceeds from the rebuttable presumption that counsel 'rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.'" (quoting *Strickland*, 466 U.S. at 690)). Counsel's theory of the case was that another person abused the victims, and there was evidence of that abuse presented at trial. See *Matthews v. State*, 350 S.C. 272, 276, 565 S.E.2d 766, 768 (2002) ("Where counsel articulates valid reasons for employing certain strategy, such conduct will not be deemed ineffective assistance of counsel.").

Additionally, we hold the PCR court did not err by finding Scarborough failed to prove he was prejudiced by trial counsel's alleged error. *Strickland*, 466 U.S. at 694 (stating that to prove prejudice, a PCR applicant "must show that there is a reasonable probability that, but for [trial] counsel's unprofessional errors, the result of the proceeding would have been different"). The State's argument did not constitute vouching because it offered no explicit personal assurances or information outside of the record when arguing for the victims' credibility. *See Tappeiner v. State*, 416 S.C. 239, 250, 785 S.E.2d 471, 477 (2016) ("Thus, solicitors must confine their closing remarks to the record and reasonable inferences that may be drawn therefrom.").

[ECF No. 25-10 at 2].

Petitioner does not address the reasoning or case law provided by either the PCR Court or the Court of Appeals in either his petition or his response. [*See* ECF No. 7 at 6, ECF No. 39 at 13–14].

26

Respondent argues Petitioner's argument fails for two reasons. First, Petitioner's argument ignores the well-articulated defense and trial strategy used by trial counsel. Second, even if trial counsel were deficient by not objecting to the solicitor's comment, Petitioner was not prejudiced by trial counsel's failure because the Solicitor's comment was not objectionable and did not affect the outcome of Petitioner's trial. The undersigned agrees.

Trial counsel is not required to object at every opportunity if counsel has a reasonable explanation for not doing so. There is a strong presumption that counsel's decisions are based on tactical strategy rather than neglect. *Yarborough v. Gentry*, 540 U.S. 1, 8 (2003). "Accordingly, when counsel articulates a valid reason for employing a certain strategy, such conduct will not be deemed ineffective." *Stokes v. State*, 419 S.E.2d 778 (S.C. 1992).

Here, trial counsel articulated the following strategy when he was asked why he didn't consider the solicitor's comments in closing to be vouching for the credibility of the victims:

> Trial Counsel: I could see where your position is that it would. Again, there is, from my research and preparation for the case, one of the big considerations that you have with minor children is source information. So where does a child come up with the idea of making an accusation about a sexual battery or a sexual assault. It is probably the consensus of anyone who listens to a five, six, seven or eight year old that there would need to be some sort of source for this information. Around that they wouldn't just come up with it out of thin air. So I did not view that as vouching. Again, I think that it was something that's inherent to the nature

27

and the age of the children for there to be some source for their accusations.

[ECF No. 25-3 at 535–36].

During cross examination at the PCR hearing, trial counsel further elaborated on his trial strategy regarding the potential sexual assault by a third party being the source of the victim's sexual knowledge:

> Trial Counsel: That was probably one of the better parts of my investigation for [Petitioner] was in a stack of incident reports locating a cousin of the victims who was alleged to have sexually assaulted some other members of the family. And I think that one of the minor children actually states that he saw his cousin, I believe it was Stephen, sexually assault someone. And as I mentioned previously when you're dealing with minor children finding a source for the knowledge regarding the sexual battery or sexual assault became a very important issue that I wanted to bring up so the jury could understand that these children, perhaps, didn't just make this up out of thin air; that they had seen things in their life that lead them to make this up and also they were directed and coached by individuals to make this accusation.

*Id.* at 546–47.

Trial counsel's testimony at the PCR hearing regarding his strategy was corroborated by his closing argument at trial, to wit:

> Trial Counsel: Now, you may say, Stefan Murphy, what does he have to do with anything? See, the basis of the State's case is that where else could these children have come up with this information? How else would a child know what to say or what accusations to make? How else would a child know what it was like to be sexually assaulted? What I present to you as in the case of [Minor #1] he had been sexually assaulted by the family member, Stefan Murphy. And that's why the villainization's of going into these details, the reason being because the victim's

28

sexual knowledge and their exposure to these things is highly relevant in these case (sic) so we can understand how a young child comes up with these kinds of accusations. Why would a child manifest these accusations out of thin air? And as their expert said it comes from their life's experiences. It comes from the things that they have seen and they have experienced. That's where these accusations come from . . . .

*Id.* at 430–31.

Trial counsel's decision to raise the possibility that the cousin committed the sexual assaults rather than Petitioner was a reasonable and sound strategic decision. Because trial counsel articulated a valid reason and trial strategy for refusing to object to the solicitor's statement in closing argument, the PCR Court and the Court of Appeals appropriately found he was not deficient in his representation of Petitioner.

Even if trial counsel's failure to object the solicitor's statements in closing argument were deficient, Petitioner has not shown he was prejudiced by the failure to object.

Petitioner is correct that "[a] prosecutor cannot vouch for the credibility of a witness by expressing or implying his personal opinion concerning a witness' truthfulness." *State v. Shuler,* 545 S.E.2d 805, 818 (S.C. 2001). "Improper vouching occurs when the prosecution places the government's prestige behind a witness by making explicit assurances of a witness' veracity, or where a prosecutor implicitly vouches for a witness' veracity by indicating information not presented to the jury supports the testimony." *Id.*

Here, however, as found by the PCR Court and the Court of Appeals, this case does not present an example of vouching but rather an argument in favor of a witness' credibility based upon evidence in the record: the victims' ages and the absence of other explanation for their sexual knowledge.

Accordingly, the undersigned recommends dismissal of Ground One.

### 2. Ground Two

In Ground Two, Petitioner argues the trial judge abused his discretion by refusing to sever the seven indictments that concerned three different child victims.

Responding to Petitioner's direct appeal on this issue, the Court of Appeals stated:

> As to whether the trial court erred in consolidating the three minors' cases: *State v. McGaha*, 404 S.C. 289, 293–94, 744 S.E.2d 602, 604 (Ct.App.2013) ("[A] trial court may try separate charges together 'where they (1) arise out of a single chain of circumstances, (2) are proved by the same evidence, (3) are of the same general nature, and (4) no [substantive] right of the defendant has been prejudiced.'" (citing *State v. Harris*, 351 S.C. 643, 652, 572 S.E.2d 267, 272 (2002))); *McGaha*, 404 S.C. at 294, 744 S.E.2d at 604 ("The trial court has discretion in deciding whether to try charges together, and its decision will be reversed only if there is no evidence to support it or it is controlled by an error of law.").

*Scarborough*, 2016 WL 757427, at *1.

Petitioner does not address the case law provided by the Court of Appeals in either his petition or his response. [*See* ECF No. 7 at 9–10, ECF No. 39 at 14–17].

Here, Petitioner has failed to show the Court of Appeals reached a decision that was contrary to or an unreasonable application of precedent or an unreasonable determination of the facts given the evidence and record. At pretrial, the State moved to consolidate the cases involving all three victims, arguing they were of the same general nature, each victim was a necessary witness for the others, and they were closely related in kind, place, and character in accordance with *State v. Jones*, 479 S.E.2d 517 (S.C. Ct. App. 1996). [ECF No. 25-1 at 9–11]. Defense counsel argued allowing the cases to be tried together would create substantial prejudice. *Id.* at 11–13. After listening to the arguments, the trial judge granted the motion to consolidate based on the factors from *Jones* and in the interest of judicial economy. *Id.* at 17.

The court discerns no error, and, accordingly, the undersigned recommends the district judge dismiss Petitioner's Ground Two.

### 3.     Ground Three

In Ground Three, Petitioner argues the trial judge erred in allowing testimony from Victim #4, not a named victim in the indictments, pursuant to South Carolina Rules of Evidence 404(b).

Responding to Petitioner's direct appeal on this issue, the Court of Appeals addressed this issue:

> As to whether the trial court erred in allowing a witness to testify Scarborough previously abused him: *State v. Wallace*, 384 S.C. 428, 432, 683 S.E.2d 275, 277 (2009) (stating evidence of other crimes, wrongs, or acts of a defendant "is not admissible to prove the defendant's guilt except to show motive, identity, existence of a common scheme or plan, absence of mistake or accident, or intent" (citing Rule 404(b), SCRE)); *State v. Pierce*, 326 S.C. 176, 178, 485 S.E.2d 913, 914 (1997) (stating relevant evidence of other crimes, wrongs, or acts of a defendant is only admissible if (1) the act resulted in a conviction or (2) the evidence is clear and convincing); *Wallace*, 384 S.C. at 435, 683 S.E.2d at 278–79 (stating once evidence of a defendant's other crimes, wrongs, or acts is admissible to show a common scheme or plan, "the trial court must . . . conduct the prejudice analysis required by Rule 403"); Rule 403, SCRE ("[E]vidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."); *State v. Johnson*, 413 S .C. 458, 466, 776 S.E.2d 367, 371 (2015) (stating the admission or exclusion of evidence is left to the discretion of the trial judge and "will not be reversed on appeal absent an abuse of discretion").

*Scarborough*, 2016 WL 757427, at *1.

Petitioner does not address the case law provided by the Court of Appeals in either his petition or his response beyond making a brief reference to *Lyle*, 118 S.E. 803. [*See* ECF No. 7 at 12–13, ECF No. 39 at 18–14].

Here, Respondent argues the trial court properly allowed testimony of prior or other bad acts by Petitioner because the acts were admissible as part of a common scheme or plan under Rule 404(b), SCRE, and *Lyle*, 118 S.E.

803. The trial court properly considered the evidence and allowed the evidence of Victim #4's sexual abuse by Petitioner as part of a common scheme or plan based on the similarities to the acts charged.

Prior to trial, the State moved in limine to admit the testimony of Victim #4 regarding sexual abuse by Petitioner. [ECF No. 25-1 at 17]. Victim #4 testified Petitioner was known to him as an uncle, though he was not certain they were actually related. *Id.* at 24–25. When Victim #4 was three years old, Petitioner made Victim #4 put Petitioner's penis in his mouth in Petitioner's truck outside a store. *Id.* at 25–26.

As argued by Respondent and not addressed by Petitioner:

Victim 4's testimony is sufficiently similar to the testimony by the victims to be admissible. All three testified to being similar ages during the sexual abuse, from age three to six. The type of abuse was similar because it involved oral sex or penetration. Each victim was a male child. Petitioner was in a position of authority over each of the victims, as Petitioner was an uncle by marriage of Victim 4 and babysat him on a regular basis and was a neighbor to the other victims, regularly keeping them and having them over to his house to play. (App. 31, ll. 17–24; 219, ll. 19–24; 258, ln. 21–259, ln. 12). The only dissimilarity was where the abuse occurred. Victims 1 and 3 were abused in Petitioner's back yard or barn, while Victim 4 was abused in Petitioner's truck outside a store. The similarities in this case certainly outweigh the slight difference of where the abuse occurred. Notable, Petitioner conceded the ages and genders of the victims were similar. (App. 40, ln. 24–41, ln. 1) . . . . due to the similarities between Victim 4's sexual abuse that happened to Victims 1 and 3—young boys between the ages of three and six, Petitioner having a position of authority over them, the types of abuse; anal and oral—there were unique characteristics that connected the victims to Victim 4.

[ECF No. 25 at 28–29].

Accordingly, the undersigned recommends the district judge dismiss Petitioner's Ground Three.

### 4. Ground Four

In Ground Four, Petitioner argues the trial judge abused his discretion by failing to declare a mistrial after Minor #2 denied the allegations as found in the indictments, as confirmed later in trial by the forensic interviewer and the investigator from the Attorney General's Office.

Responding to Petitioner's direct appeal on this issue, the Court of Appeals stated:

> As to whether the trial court abused its discretion in not declaring a mistrial after one minor denied Scarborough abused him and another minor testified he had not seen Scarborough abuse the other minors: *State v. Harris*, 340 S.C. 59, 63, 530 S.E.2d 626, 628 (2000) (stating the decision to grant or deny a mistrial is within the discretion of the trial court); *State v. Inman*, 395 S .C. 539, 565, 720 S.E.2d 31, 45 (2011) (stating granting a "motion for a mistrial is an extreme measure that should be taken only when the incident is so grievous the prejudicial effect can be removed in no other way"); *State v. Wilson*, 389 S.C. 579, 586, 698 S.E.2d 862, 865–66 (Ct.App.2010) ("The determination of prejudice must be based on the entire record and the result will generally turn on the facts of each case." (citation omitted)).

*Scarborough*, 2016 WL 757427, at *1.

Respondent argues the trial judge properly denied Petitioner's motion for a mistrial even though Minor #2 denied the allegations in one indictment

and did not disclose abuse to the forensic interviewer or investigator. As stated by Respondent, "[t]he State subsequently withdrew that indictment, the consolidation of the three cases was proper based on what the State, in good faith, believed the case would show." [ECF No. 25 at 30]. Officer Turner testified Minor #2 disclosed to him that he was sexually abused. Thus, according to Respondent, "the State brought the charge based on the evidence it possessed at the beginning of the trial and did not know that Minor #2 would fail to disclose the abuse during his testimony." *Id.*

The "[g]ranting of a mistrial is a serious and extreme measure which should only be taken when the prejudice can be removed no other way." *State v. Edwards*, 644 S.E.2d 66, 69 (S.C. Ct. App. 2007). "The decision to grant or deny a mistrial is within the sound discretion of the trial court. The trial court's decision will not be overturned on appeal absent an abuse of discretion amounting to an error of law." *State v. Wilson*, 698 S.E.2d 862, 865 (S.C. Ct. App. 2010) (citation omitted). "A mistrial should only be granted when absolutely necessary, and a defendant must show both error and [] prejudice in order to be entitled to a mistrial." *Id.* at 865 (citation omitted). "Insubstantial errors that do not impact the result of the case do not warrant a mistrial when guilt is conclusively proven by competent evidence." *Id.* at 865 (citation omitted). "The determination of prejudice must be based on the entire record and the result will generally turn on the facts of each case." *Id.*

at 865–66 (citation omitted). The trial court is in the best position to ascertain the potential prejudicial effect of any offending testimony, and the Supreme Court favors the exercise of wide discretion of the circuit court in ruling on a motion for mistrial in each individual case. *State v. Jones*, 479 S.E.2d 571, 524 (S.C. Ct. App. 1996).

Here, the record does not indicate that the trial court erred in denying Petitioner's motion for a mistrial, and Petitioner has failed to overcome the heavy burden to show the trial judge should have granted his motion for mistrial. However, even if the trial court erred in denying the motion for a mistrial, Petitioner has shown no prejudice resulting from the denial. *See Wilson*, 698 S.E.2d at 865 ("A mistrial should only be granted when absolutely necessary, and a defendant must show both error and [] prejudice to be entitled to a mistrial.") (citation omitted)).

At trial, Petitioner argued he was prejudiced because "we have lumped all these accusations together, and now we're going to admit *Lyle* evidence based on this case but not that case." [*See* ECF No. 25-1 at 269–70]. However, even though Minor #2's indictment was withdrawn, the evidence from Minors #1 and #3 were sufficiently like Victim #4's testimony to allow it to be admitted under *Lyle*. Therefore, removing Minor #2's indictment did not affect the use of Victim #4's testimony and did not prejudice Petitioner.

As argued by Respondent, and not disputed by Petitioner, rather than prejudice Petitioner, withdrawing the indictment based on Minor #2's inability to testify to the sexual abuse benefited Petitioner by indicating to the jury the State did not believe it had enough to convict Petitioner of a crime against Minor #2. It is undisputed the jury heard Minor #2's testimony that Petitioner did not sexually abuse him. So, the jury knew an initial claim of abuse turned out to be false, at least based on the testimony of Minor #2. Again, as argued by Respondent and not addressed by Petitioner, this all inured to Petitioner's benefit.

Accordingly, the undersigned recommends the district judge dismiss Petitioner's Ground Four.

5.      Ground Five

In Ground Five, Petitioner argues the trial judge erred in refusing to direct a verdict of acquittal on the dissemination of obscene material charges where the State did not introduce evidence concerning the materials beyond the testimony of the children. Petitioner argues he was convicted on these charges based on insufficient evidence.

Responding to Petitioner's direct appeal on this issue, the Court of Appeals stated:

> As to whether the trial court erred in not directing a verdict on the three charges of dissemination of obscene material: *State v. Harris*, 413 S.C. 454, 457, 776 S.E.2d 365, 366 (2015) ("When

> reviewing a denial of a directed verdict, this [c]ourt views the evidence and all reasonable inferences in the light most favorable to the state." (citation omitted)); *id.* ("If there is any direct evidence or any substantial circumstantial evidence reasonably tending to prove the guilt of the accused, the [c]ourt must find the case was properly submitted to the jury." (citation omitted)).

*Scarborough*, 2016 WL 757427, at *2.

Both Petitioner and Response agree that the state statute on disseminating obscene materials does not require evidence of the obscene material itself be introduced. Evidence in the form of testimony from the victims is sufficient to establish the nature of the material such that the jury could determine whether Petitioner had violated the statute.

Here, the trial judge read the relevant statute to the jury, so it was fully aware of its responsibility in making its own determination of whether the statute had been met. [*See* ECF No. 25-2 at 455]. According to the language of subsection (D), the jury is allowed to judge obscenity with reference to children if it appears from "the circumstances of its dissemination to be especially for or directed to children . . . ." S.C. Code Ann. § 16-15-305 (2003). Based on the testimony of the victims, the jury could have found the material was obscene by listening to the victims' description of the content and by the circumstances in which it was shown to the child victims.

Because no requirement to produce the actual obscene materials exists in the statute, the trial court properly denied Petitioner's motion for directed

verdict based on the State's failure to introduce into evidence any purported obscene materials. The testimony of the victims was sufficient direct evidence to withstand the directed verdict motion and allow the case to go to the jury.

Accordingly, the undersigned recommends the district judge dismiss Petitioner's Ground Five.[4]

III.    Conclusion and Recommendation

For the foregoing reasons, the recommends the court grant Respondent's motion for summary judgment [ECF No. 26] and dismiss the petition with prejudice.

IT IS SO RECOMMENDED.

March 14, 2025                           Shiva V. Hodges
Columbia, South Carolina                United States Magistrate Judge

**The parties are directed to note the important information in the attached "Notice of Right to File Objections to Report and Recommendation."**

---

[4] Given the recommendations above, the court need not address Respondent's additional arguments for dismissal as to Grounds 2, 3, 4, and 5, that these grounds are not cognizable on federal habeas review. *See, e.g., Bradshaw v. Richey*, 546 U.S. 74, 76 (2005) (holding a state court's interpretation of state law including one announced on direct appeal, binds the federal court sitting in habeas corpus); 28 U.S.C. Section 2254 (federal habeas is available only for violations federal constitutional law); *Estelle v. McGuire*, 502 U.S. 62 (1991).

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Robin L. Blume, Clerk
United States District Court
901 Richland Street
Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).